[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the Court by Verified Complaint of the City of Waterbury seeking injunctive and other relief.
Eileen Hosier is the owner of property at 83 Lounsbury Avenue, Waterbury, Connecticut. The property is structurally set up as a three-floor, three-family house. However, there are no occupants on the third floor. The second floor is comprised of a self contained apartment unit. It is occupied by Ms. Hosier's mother and Ms. Hosier's adult daughter. Ms. Eileen Hosier is the sole human occupant of the first floor. (While her husband is there occasionally, he does not live there.)
Ms. Hosier's first floor apartment contains six rooms, including a kitchen, bathroom and two bedrooms. There is also a basement to the building but it is unoccupied.
The City of Waterbury Health Department received a complaint regarding the property at 83 Lounsbury Avenue on August 27, 1996. It was referred to the Health Department by both the Mayor's and Corporation Counsel's offices. The complaint was of a bad odor of dog feces and urine, supposedly emanating from the property.
An inspector from the Health Department went to the property at 83 Lounsbury Avenue the morning of August 27, 1996 to investigate the complaint. That inspector, Alan Thibodeau, attempted inspection at about 10 A.M. He was accompanied by Steve Flaherty, the City's Dog Warden.
Upon exiting his vehicle, at street level, Inspector Thibodeau immediately detected an odor of dog feces and urine. He climbed steps toward the structure, which is set up about 50 feet above street level. The odor increased as he approached the house. He rang the doorbell to the house. There was no answer. They left the premises. While outside the premises, the only feces or urine detected by Inspector Thibodeau, was a puddle on the front porch CT Page 711 that looked and smelled like urine, and, some feces under the porch. Inspector Thibodeau routinely filed a report of his inspection.
Dr. Ulder J. Tillman is the Director of Health for the City of Waterbury, and was, at all times relevant to this matter. She reviewed the report of Alan Thibodeau. After reviewing it and the City Health Code, she issued an Order of Abatement to Eileen Hosier.
The Order of Abatement directed Eileen Hosier to abate the smell of animal urine and feces at 83-85 Lounsbury Avenue within forty-eight (48) hours. The Order also ordered a reinspection of the premises. The Abatement Order notified Ms. Hosier that the referenced Connecticut health conditions observed by inspection were in violation of Article IV, Section 47 and 48 of the City of Waterbury Code.
Eileen Hosier denied ever receiving or seeing the Order of Abatement prior to the trial of these proceedings. The Court does not find her testimony credible regarding this. Further, the Court notes that the document was served upon her by abode service. The testimony of the sheriff regarding issues of service was credible. He specifically recalled the service on August 29, 1996 because that is his birthday.
On September 3, 1996, Inspector Thibodeau returned to Ms. Hosier's home at 83 Lounsbury Avenue for the purpose of a reinspection. Ms. Hosier was present but refused him admittance to the interior of the structure. Mr. Thibodeau detected a strong odor of dog feces and urine emanating from the house. It was also detectable, to a lesser extent, from the street.
Thereafter, the City of Waterbury instituted this action, seeking as preliminary relief, an order from the Court permitting the inspection of the premises at 83 Lounsbury Avenue by a representative of the City's Health Department. After hearing, such an Order issued with October 10, 1996 set as the date for inspection.
On October 10, 1996, Alan Thibodeau returned to the premises for inspection, accompanied by Grace Taylor, a licensed sanitarian with the Health Department. They donned protective covering. Before entering, both detected a strong odor of feces and urine at street level which increased the closer they got to the house. CT Page 712 They each wore respirators while in the house.
In the house, encrusted feces were observed on floors, walls and furniture in several rooms. All rooms observed were in similar condition. There was no room free of dog feces. Ms. Taylor was counting the dogs, but lost track after 26 dogs, although she is sure there were more than that. The dogs were permitted to travel freely throughout the first floor. There was one locked room, however, which was opened for inspection. In it was a pile about 2 feet in diameter of encrusted feces showing recent attempts at cleaning.
In the kitchen, the cabinet doors were off, providing bays that the dogs utilized as additional living space. The dogs' food was kept in areas unrestricted from defecation and urination; that is, there was no barrier protecting it. Indeed, there was no place in the apartment that was restricted for human habitation needs to prevent access to the many dogs.
On the rear porch was dog food, which while showing evidence of attempts to keep clean, had feces in close proximity. There were flies observed in the area.
The second and third floors were both inspected and found to be clean. Descending to the first floor, Ms. Taylor removed her respirator and found the odor of feces and urine to be very strong.
Subsequent to the inspection, Mr. Thibodeau prepared a report. The report referenced violations of sections 19-13B1(c) and (i) and 19-13B2(a) of the State of Connecticut Health Code and Article IV, Sections 47 and 48, City of Waterbury Code.
Further interim proceedings continued in court. A reinspection order for October 30, 1996 was issued by agreement of the parties. That agreement, which became a court order, stated, "The defendant shall use her best efforts personally to clean the premises to remove noxious odors by October 29, 1996." There was also an agreement that she would have no more than 26 dogs. The inspection occurred on November 5, 1996. Alan Thibodeau prepared a report which referenced the conditions he observed on November 5, 1996. Mr. Thibodeau and Ms. Taylor found efforts had been made to clean the premises. The odor of Lysol permeated the premises as well as feces and urine. Some of the floors had been mopped and walls scraped of feces. However, substantial problems of this nature continued. There were still in excess of twenty-six (26) CT Page 713 dogs present and some were observed to have dried feces on them. The encrusted pile of feces remained in one room. The kitchen had encrusted feces in spots.
By agreement of the parties dated November 6, 1996, the Dog Warden entered the premises to count the dogs and remove any dogs over 26 in number.
On November 18, 1996 a new odor complaint was made in regard to the subject property. An inspection was made and eight trash removal bags of dog feces with newspaper were found on the sidewalk, bound and waiting pickup by the Sanitation Department of, the City of Waterbury. A separate abatement order was issued as to this matter. This abatement order and the propriety of leaving these refuse bags on the sidewalk for Sanitation Department pickup are not issues before this Court. While the investigator on November 18, 1996 smelled feces by the sidewalk, that is relevant only so far as it contributes to the City's claim of nuisance. That Ms. Hosier might have the right to expect the City to pick up this refuse is not before this Court. That this refuse mightcontribute to conduct or maintenance of a condition constituting a nuisance, while waiting for refuse pickup, is a fact this Court may consider.
Ms. Hosier and most of her fact witnesses testified that there was no significant odor of dog feces and/or dog urine detected by them on an ongoing basis. Marc Veirier, who was present on October 16, 1996 during the inspection, smelled nothing except cleaner and saw no encrusted feces on walls at the premises. Indeed of the many times he visited the premises he never smelled any feces or urine from the many dogs. Mr. Veirier's testimony is absurd and not credible. It is rejected by this Court. The only odor the others detected was from fresh droppings said to be quickly removed.
Ms. Hosier's fondness for her dogs clouds her ability to accurately reflect the situation.
Across the street from Ms. Hosier, lives Ms. Torres. She has second floor apartment in a building far off the ground level, as well. In the summer she has discerned an odor of dog feces inside her living room. She noted that in the heat of the summer, windows are open; this allowed the smell to permeate her living room. She found the odor so noxious that she occasionally got headaches from it. She and her landlord Mr. DeSilva have detected the odor from CT Page 714 street level during other seasons as well as summer. The Court finds Ms. Torres a credible witness who accurately described the odor condition experienced in the heat of the summer as a result of the dog feces odor drifting through the open windows of homes in the area of 83 Lounsbury Avenue, Waterbury to neighboring properties.
Ms. Hosier's own daughter (by her demeanor it was clear that she was conflicted by her loyalty to her mother) protested repeatedly that she was sure the first floor of the premises could be adequately cleaned up just as the second floor had been. While this begs the question before this Court, it acknowledges a problem in need of some ultimate rectification.
The City's verified complaint claims injunctive relief for abatement under Connecticut General Statutes § 47a-50 et seq. and § 19a-206 et seq. Conn. Gen. Stat. § 47a-50 is contained in the Chapter pertaining to Public Enforcement of Health and Safety Standards in Tenement and Boarding Houses, and in Rented Dwellings. There was no evidence before the Court that 83 Lounsbury Avenue, Waterbury, at times relevant to these proceedings, has been used as a tenement, boarding house or rented dwelling as defined in Conn.Gen. Stat. § 47a-50. All of the occupants of the premises are relatives of Ms. Hosier and there was no evidence of any landlord/tenant relationship[s]. Therefore the sanitary regulations and abatement provisions of Conn. Gen. Stat. §§ 47a-51, 52 and 53 do not apply here. This portion of the City's claim fails.
There remains the authority asserted by the City pursuant toConn. Gen. Stat. § 19a-206. The City claims that Ms. Hosier is maintaining a nuisance at 83 Lounsbury Avenue in violation of an Abatement Order issued pursuant to the statutory provision that ". . . city . . . directors of health or their authorized agents shall . . . examine all nuisances and sources of filth injurious to the public health, cause such nuisances to be aborted and cause to be removed all filth which in their judgment may endanger the health of the inhabitants. Conn. Gen. Stat. 19a-206 (a).
It is the position of Ms. Hosier that the condition she maintains at her residence with her dogs is not a nuisance, and, even if this Court were to find it a nuisance, it does not endanger the health of its inhabitants.
Apparently, she relies on that portion of Conn. Gen. Stat.
CT Page 715 § 19a-207 (a) which goes on to provide that if a violation of the Public Health Code is maintained, that is ". . . deemed to be maintaining a nuisance or source of filth injurious to the public health."
The action maintained here is pursuant to § 19a-206 (b)(1) for injunctive relief where an abatement order has not been complied with.
Conn. Gen. Stat. § 19a-206 (a) allows a director of health to seek an ex parte injunction where the director claims the maintenance of the nuisance or filth "is of so serious a nature as to constitute an immediate hazard to the health of persons other than the persons maintaining such nuisance or filth. . . ." The City sought such an ex parte injunction but it was not granted. After hearing, a temporary injunction issued. This hearing is on the City's Complaint for a Permanent Injunction.
Notwithstanding Ms. Hosier's position to the contrary, then, the standard is whether a nuisance exists, not the enhanced standard (of § 19a-206 (c) for ex parte applications) of constituting an immediate health hazard to others.
The City of Waterbury and the State of Connecticut, respectively, have each determined that the maintenance of certain conditions constitute a nuisance.
The City, at City Code § 96-120, has legislated that maintenance of the following condition constitutes a nuisance:
 "Any animal kept in any . . . private place near any inhabited dwelling house or public highway, within the city in such manner that noxious or offensive odors are created and sent forth, from the . . . private place rendering the air near the same offensive to the senses . . . shall be deemed and is hereby declared to be a nuisance."
(This section was formally known as Article IV, Section 47 of the Waterbury City Code, and is cited as such in Dr. Tillman's Order.)
The Court finds that Ms. Hosier has kept in her home at 83 Lounsbury Avenue such an excessive number of dogs that she cannot; from day to day prophylactively control the noxious and offensive CT Page 716 odors emanating from their elimination of waste, necessary bodily functions. The Court further finds that 83 Lounsbury Avenue is in a neighborhood with houses closely situated, elevated above the public street and public sidewalks. This maintenance, as presently constituted, of numerous dogs, counting in their twenties, constitutes a nuisance under Waterbury City Code § 96-110.
The City requests all but five dogs be ordered removed and the premises ordered professionally cleaned. The balance of the evidence supports the ability of Ms. Hosier to adequately care for five (5) dogs on a daily basis within the subject premises.
The Court orders Ms. Hosier, within 45 days from the filing of these Orders to remove all but five (5) of her dogs. The City may inspect to confirm their removal thereafter on the 50th day (or the next business day thereafter if a holiday or weekend) at 10 A.M. If the dogs are not removed, the City is to remove all but five (5) dogs at that time.
The Court orders Ms. Hosier to adequately clean the premises so that no odor emits outside its property lines when the doors and windows are open. This is to be accomplished by May 16, 1997.
Lynda B. Munro, Judge CT Page 717